# In the United States Court of Federal Claims

No. 11-217 C

(Filed January 17, 2014)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| INNOVATION DEVELOPMENT | * | |
| ENTERPRISES OF AMERICA, | * | Post-Award Bid Protest; Bid |
| INC., | * | Preparation and Proposal Costs; |
| | * | 28 U.S.C. § 1491(b)(2) (2012); |
| *Plaintiff*, | * | 48 C.F.R. §§ 31.201-3(a), |
| | * | 31.201-4(a); 31.205-18(a), (c) |
| v. | * | (2012); Whether Bid Preparation |
| | * | and Proposal Costs Can Be |
| THE UNITED STATES, | * | Recovered When No Proposal |
| | * | Was Prepared or Submitted. |
| *Defendant*. | * | |
| * * * * * * * * * * * * * * | * | |

*Charles H. Crain*, Tulsa, OK, for plaintiff.

*Katy M. Bartelma*, United States Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Deborah A. Bynum*, Assistant Director, Washington, DC, for defendant.

---

**OPINION**

---

**Bush**, *Senior Judge*.

This post-award bid protest, in which Innovation Development Enterprises of America, Inc. (IDEA) challenges a sole-source contract award by the United States Air Force (Air Force), has been the subject of two prior opinions. An unpublished opinion issued on January 11, 2012 resolved certain procedural issues and dismissed Mr. Lawrence A. Crain, the sole proprietor of IDEA, as an

individual plaintiff in this suit.[1] *Innovation Dev. Enters. of Am., Inc. v. United States*, No. 11-217 (Fed. Cl. Jan. 11, 2012) (*IDEA I*). A published opinion issued on January 29, 2013 held that IDEA had prevailed on the merits of one of its bid protest grounds, and that IDEA had been prejudiced by the improper sole-source award by the Air Force. *Innovation Dev. Enters. of Am., Inc. v. United States*, 108 Fed. Cl. 711 (2013) (*IDEA II*). However, plaintiff's requests for injunctive relief were moot because the protested sole-source bridge contract had been fully performed, and a successor contract had been awarded as well.

After the parties' negotiations to resolve plaintiff's requests for bid preparation and proposal costs, as well as plaintiff's request for attorney fees, failed to bear fruit, the court ordered briefing on the issue of whether, in the circumstances of this case, IDEA could recover bid preparation and proposal costs under 28 U.S.C. § 1491(b)(1)-(2) (2012), and, if so, in what amount. Now before the court are Plaintiff's Motion for the Award of Bid Preparation Costs (Pl.'s Mot.), Defendant's Opposition to Plaintiff's Motion for the Award of Bid Preparation Costs (Def.'s Opp.), and Plaintiff's Reply Regarding Defendant's Opposition to Motion for the Award of Bid Preparation Costs (Pl.'s Reply). The most fundamental question before the court is whether IDEA may recover *any* bid preparation and proposal costs in circumstances where, as here, no bids were solicited from the contracting community at large, and the protestor never prepared a draft proposal and never submitted any proposal at all to the contracting agency. A related inquiry is whether the bid preparation and proposal costs claimed by IDEA are indeed properly characterized as bid preparation and proposal costs. An additional issue is whether plaintiff's claimed costs are reasonable. For the reasons stated below, the court must deny IDEA's claim for bid preparation and proposal costs in its entirety.

## BACKGROUND[2]

---

[1]/ All references to Mr. Crain in this opinion are to Mr. Lawrence A. Crain, sole proprietor of IDEA, not to his brother, Mr. Charles H. Crain, plaintiff's counsel.

[2]/ Only the background facts essential to an understanding of plaintiff's motion for bid preparation and proposal costs are included here. *IDEA II* contains a more complete history of the procurement at issue in this suit.

The contract award challenged in this suit was for support services for the Air Force's Command Man-Day Allocation System (CMAS), a system which is "used to place Air National Guard and Air Force Reserve Members on temporary tours of active duty." Administrative Record (AR) at 20. The contract services included "software support, assessment support, database administration, and configuration management." *Id.* at 85. According to Mr. Crain, CMAS was designed and programmed in the mid-1990's by a team which included Mr. Michael Fedorsak and Mr. Crain, who was then an Air Force reservist. Pl.'s Mot. at D-2. A Request for Proposals was later prepared to hire a contractor to further develop and operate CMAS, and Harris IT Services Corporation (Harris) won the first CMAS contract (for one year plus four option years) in 1999. *Id.* IDEA subcontracted with Harris on the contract, providing the services of Mr. Crain. *Id.* Harris also won a second CMAS contract in 2004 (for one year and four option years), and continued to subcontract with IDEA. *Id.* at D-3.

At the end of 2007, however, Harris stopped subcontracting with IDEA for services to support CMAS. *Id.* at D-4. According to Mr. Crain, in early 2008 he "cautiously began to explore the notion of IDEA bidding for the upcoming CMAS" contract for 2009 through 2014. *Id.* In essence, plaintiff's request for bid preparation and proposal costs rests on the foundation of this exploration, beginning in 2008, of the idea of competing against Harris for the next five-year CMAS contract, and subsequent actions of Mr. Crain, ending in 2010, which attempted to position IDEA to win the anticipated competition for CMAS services.

The Air Force, however, after extending the second CMAS contract for six months, decided to procure CMAS services in 2010 through a sole-source bridge contract, in order to bridge the gap between the second CMAS contract and another five-year CMAS contract. *IDEA II*, 108 Fed. Cl. at 717-18 & n.5. No solicitation, or contract action synopsis, for that matter, was issued for the sole-source bridge contract. After the award of the bridge contract to Harris was announced on May 21, 2010, Mr. Crain attempted, *pro se*, to protest that award before the Air Force and, eventually, before the Government Accountability Office (GAO). Once those efforts proved futile, IDEA filed its bid protest in this court on April 7, 2011.[3] By that time, Harris had performed most of the services required by the sole-source bridge contract.

---

[3]/ Mr. Crain originally attempted to litigate IDEA's bid protest before this court *pro se*.

IDEA eventually filed an amended complaint on February 21, 2012, by which time the sole-source bridge contract had been fully performed.[4] *See* AR at 182. Thus, by the time the court reached the merits of IDEA's bid protest, injunctive relief was not available. Although defendant argued that IDEA's protest was moot and should be dismissed on that ground, this court followed *Pacificorp Capital, Inc. v. United States*, 852 F.2d 549, 550 (Fed. Cir. 1988), which holds that a request for bid preparation and proposal costs presents a live controversy. *IDEA II*, 108 Fed. Cl. at 725. Defendant also argued, in a footnote within its motion for judgment on the administrative record, that IDEA's claim for bid preparation and proposal costs should be dismissed for failure to state a claim upon which relief may be granted, because these costs were not substantiated. The court disagreed, because this court has allowed plaintiffs to substantiate bid preparation and proposal costs after a decision has been reached on the merits of their protest. *Id.* at 721 n.11 (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 61 Fed. Cl. 175, 177 (2004) (*Impresa*)).

It is perhaps important to note that the court was obliged to perform extensive research to render a decision on the merits of plaintiff's bid protest. Although plaintiff prevailed as to the arbitrary and capricious nature of the sole-source award by the Air Force, it cannot be said that the legal authority which supported the court's analysis was identified by plaintiff's counsel. As the court has considered the parties' briefs regarding bid preparation and proposal costs, the court has again been obliged to find relevant legal authority to supplement the authorities relied upon by the parties. In the current dispute, those authorities do not permit recovery on the claim IDEA has presented for the court's review.

IDEA's claim for bid preparation and proposal costs was originally presented to the court in the amount of $16,378. Pl.'s Mot. at 1. All of the costs included therein are for the labor of Mr. Crain; he asserts that he worked 169 hours and that his hourly compensation rate should be approximately $97 per hour. *Id.* at D-9. In plaintiff's reply brief, the quantum of this claim was modified in light of two arguments presented by defendant. First, plaintiff acknowledges that twenty-one hours of labor that Mr. Crain claims to have expended after he learned of the sole-source award to Harris are properly excluded because such costs are

---

[4] Harris, by this time, had also obtained the follow-on CMAS contract, for one year and four option years. Pl.'s Mot. at 3.

categorized as protest costs, not bid preparation and proposal costs. Pl.'s Reply at 19. According to the hourly rate charged by Mr. Crain in 2010 for the purposes of IDEA's bid preparation and proposal costs claim, this would reduce the claim from $16,378 to $14,323.

Second, plaintiff acknowledges that the hourly rate charged by Mr. Crain might be higher than allowable. In that regard, plaintiff appears to concede that Mr. Crain's labor rate includes profit which is typically excluded from bid preparation and proposal awards. Pl.'s Reply at 21. Plaintiff therefore suggests that an alternative hourly rate be determined by the court, after the government discloses certain contract payments made to Harris for the labor of Mr. Crain, so that profit can be eliminated from Mr. Crain's hourly labor rate. Plaintiff also suggests that a correction to reflect inflation, currently included in Mr. Crain's hourly rate, is a correction that plaintiff is now willing to waive. *Id.* It is unclear whether plaintiff's proposed alternative hourly rate for Mr. Crain's labor would be higher or lower than the hourly rate currently presented in IDEA's bid preparation and proposal costs claim.

For the purposes of this opinion, the only clear dollar figure that is calculable from plaintiff's submissions is that of $14,323, for 148 hours of labor performed by Mr. Crain, which represents IDEA's claim for bid preparation and proposal costs. The court reserves a more thorough discussion of the claim presented by plaintiff, and of the parties' arguments regarding that claim, for the analysis section of this opinion. The court turns now to a discussion of the legal authorities which guide the court in this dispute.

## DISCUSSION

### I. Jurisdiction

This court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This court's authority to award bid preparation and proposal costs is found in § 1491(b)(2), which states in relevant part that

> [t]o afford relief in [a bid protest], the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

*Id.* The court reviews plaintiff's claim for bid preparation and proposal costs under § 1491(b)(2), which is specifically referenced in plaintiff's motion.[5]  Pl.'s Mot. at 3.

## II.   Bid Preparation and Proposal Costs Defined

Section 1491(b)(2) does not define bid preparation and proposal costs. To formulate a definition, the court must turn to provisions of the Federal Acquisition Regulation (FAR) which describe bid preparation and proposal costs in an analogous, contract accounting context. *E.g.*, *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 80 (2007) (citing *Coflexip & Servs., Inc. v. United States*, 961 F.2d 951, 953 (Fed. Cir. 1992)). *But see Beta Analytics Int'l., Inc. v. United States*, 75 Fed. Cl. 155, 159-60 & n.4 (2007) (expressing a minority view that FAR provisions do not define bid preparation and proposals costs that may be awarded by this court). Both parties correctly rely on the FAR to define bid preparation and proposal costs.

One pertinent FAR provision states in relevant part:

> Bid and proposal (B&P) costs means the costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential Government or non-Government contracts.

---

[5]/ The court need not consider whether plaintiff's bid preparation and proposal costs claim could be reviewed under the court's jurisdictional grant provided by 28 U.S.C. § 1491(a) (2012), *see Castle-Rose, Inc. v. United States*, 99 Fed. Cl. 517, 530-31 (2011) (noting the divergent views of the proper jurisdictional bases for bid protests brought under § 1491(a) and/or § 1491(b)), because the result would be exactly the same under § 1491(a) as it is under § 1491(b).

48 C.F.R. § 31.205-18(a) (2012).[6] The court notes that the text of this regulation, which states that bid preparation and proposal costs are those that are incurred in the preparation, submission and further support of a submitted bid, directly links bid preparation and proposal costs with the act of submitting a bid. When, by contrast, there has been no submitted bid, this regulation and its definition of bid preparation and proposal costs provide no logical support for a claim for the recovery of bid preparation and proposal costs. The court will delve further into this issue in the analysis section of this opinion, but notes here that the FAR does not appear to support plaintiff's claim for bid preparation and proposal costs.

A second FAR provision that applies to bid preparation and proposal costs states in relevant part that bid preparation and proposal costs "are allowable as indirect expenses on contracts to the extent that those costs are allocable and reasonable." FAR 31.205-18(c). A third FAR provision states in relevant part that a cost is allocable to a government contract if it is "incurred specifically for the contract." FAR 31.201-4(a). A fourth FAR provision states in relevant part that

> [a] cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business. . . . No presumption of reasonableness shall be attached to the incurrence of costs by a contractor.

FAR 31.201-3(a). The above-cited FAR provisions provide a basic conceptual framework which aids this court's review of claims for bid preparation and proposal costs. *See, e.g.*, *Geo-Seis Helicopters*, 79 Fed. Cl. at 80.

Although each claim for bid preparation and proposal costs differs, certain types of costs have been identified by courts as potentially recoverable bid preparation and proposal costs. These include "'development of engineering data and cost data necessary to support the contractor's bids or proposals,'" *Coflexip*, 961 F.2d at 953 (quoting 41 C.F.R. § 1-15.205-3 (1983)); "researching specifications, reviewing bid forms, examining cost factors, and preparing draft

---

[6]/ All further references to the FAR, unless otherwise specified, are to the current version of Title 48 of the Code of Federal Regulations, which does not appear to differ in pertinent part from the versions in force when IDEA is alleged to have incurred bid preparation and proposal costs.

and actual bids," *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 631 (2002) (citations omitted); and the printing and delivery costs of submitting a proposal, *Geo-Seis Helicopters*, 79 Fed. Cl. at 81; *Beta Analytics*, 75 Fed. Cl. at 168-70. As can be seen from this list of bid preparation and proposal costs, such costs are distinct and severable from general business operation costs in that bid preparation and proposal costs are incurred in furtherance of the submission of a particular proposal.

The court notes, too, that bid preparation and proposal costs are a subset, not the entirety, of the costs a contractor may choose to invest to compete for the award of a government contract. *See, e.g.*, *AT & T Techs., Inc. v. United States*, 18 Cl. Ct. 315, 323 (1989) (*AT & T Technologies*) (noting that although bid preparation and proposal costs "are inherently pre-contract costs, . . . [bid preparation and proposal costs] are a more specific and narrow category of pre-contract costs"). As the United States Court of Appeals for the Federal Circuit has stated,

> in a negotiated procurement, . . . costs which do not support an initial or revised proposal are costs which a contractor incurs in an effort to better position itself to perform any contract it should be awarded. These latter costs, incurred *in anticipation of* contract award, are not proposal preparation costs.

*Coflexip*, 961 F.2d at 953. Thus, although in a contractor's view certain preparatory activities should be reimbursable as bid preparation and proposal costs after prevailing in a bid protest, it is also possible that such claims will be rejected because these costs are better characterized as costs incurred to prepare for contract performance rather than as costs incurred to prepare a bid for submission. *See, e.g.*, *AT & T Technologies*, 18 Cl. Ct. at 322 (stating that "costs includ[ing] the purchase of equipment . . . and various labor costs incurred in order to meet the requirements of the anticipated contract . . . were [not] incurred for purposes of preparing the plaintiff's proposal but rather to place the plaintiff in a position to perform the contract had it received the award"); *Stocker & Yale, Inc.*, B-242568, 93-1 CPD ¶ 387, 1993 WL 181158, at *3 (Comp. Gen. May 18, 1993) (stating that "the costs of developing and testing a product in order to qualify it for listing on a [qualified products list] do not fall within the scope of proposal preparation costs, and they are therefore not reimbursable"). The general rule is that costs incurred to

prepare for contract performance are *not* bid preparation and proposal costs. *Lion Raisins*, 52 Fed. Cl. at 631 ("Costs incurred in anticipation of or to qualify for a contract award are not recoverable bid preparation expenses." (citing *Coflexip*, 961 F.2d at 953, and *Stocker & Yale*, 1993 WL 181158, at *3-4)).

### III. Costs Which Clearly Do Not Constitute Bid Preparation and Proposal Costs

There are specific examples of claims for costs incurred by protestors which have been rejected by this court or the GAO as not qualifying as bid preparation and proposal costs. These examples are instructive because of the distinctions that must be drawn between general business costs and pre-contract costs, on the one hand, versus bid preparation and proposal costs, on the other. The examples discussed here are illustrative rather than comprehensive. The examples of expenditures discussed here can be divided roughly into the categories of training, marketing/networking, and pre-contract logistics.

#### A. Training Classes

Although a contractor may invest in training to learn how to compete for government contracts and to learn how to draft a proposal, such training costs are not bid preparation costs because they are general business costs. For example, this court rejected a protestor's claim for the costs of sending its consultant to a three-day proposal writing workshop, because this cost was an "ordinary business expense," not a bid preparation and proposal expense. *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 85 Fed. Cl. 558, 570, *rev'd on other grounds by* 586 F.3d 1372 (Fed. Cir. 2009). As the GAO has explained, training to gain expertise which will aid in preparing a proposal is a general business cost, not a bid preparation and proposal cost:

> Offerors may incur substantial costs in anticipation of, or in the course of, competing for a contract, without those costs thereby becoming proposal preparation costs. For example, a manufacturer of software hoping to win a contract to provide computer integration services might send its employees for retraining in computer integration to facilitate their writing of the proposal for that contract, and the company might borrow money in order to fund

> that retraining. As with [the protestor's] expenses here, the offeror could well view those costs as "integral to the submission of [the offeror's] bid and [its] ability to win the contract," but they nonetheless normally fall outside the scope of the ordinary meaning of the term "proposal preparation."

*Stocker & Yale*, 1993 WL 181158, at *3 (alterations in original). As these examples show, building capacity in order to produce a better proposal is distinct from the costs incurred in preparing and delivering a proposal. Thus, the costs of training classes are not recoverable bid preparation and proposal costs.

### B. Marketing and Networking

Potential government contractors market their services and network with their contacts in government agencies. The cost of such activities, however, are distinct from bid preparation and proposal costs. For example, this court has noted that marketing and networking activities are distinct from bid preparation and proposal costs, even though all such costs are incurred in efforts to obtain business for the contractor:

> Selling activity can include such "broad categories" as sales, promotions, negotiations, liaison with Government personnel, as well as bid and proposal costs. . . . The Court of Claims . . . distinguished between selling costs, which are those costs "directly attributable to marketing efforts," from [bid preparation and proposal] costs which are incurred in "preparing bids or proposals." Because the selling costs at issue here are specifically distinguishable from [bid preparation and proposal] costs, and [bid preparation and proposal] costs are the only damages that may be recovered [in a bid protest], the plaintiff here may not recover its selling costs.

*AT & T Technologies*, 18 Cl. Ct. at 325 (citations omitted). Similarly, the GAO found that a series of meetings between agency personnel and a government contractor were in the nature of market research, not bid preparation, where the agency was trying to determine if the contractor could provide certain services, and

the contractor was attempting to be "proactive" and "find out" what the agency needed. *Lockheed Martin Sys. Integration-Owego*, B-287190.5, 2002 CPD ¶ 49, 2002 WL 442011, at *2-3 (Comp. Gen. Mar. 20, 2002) (*Lockheed Martin*). The GAO rejected a claim for the costs of attending these meetings, because these were "direct selling" costs, not bid preparation and proposal costs. *Id.* at *3 (citations omitted). The distinction between marketing/networking and bid preparation and proposal costs is thus well established in bid protest decisions.

As was noted in *Lockheed Martin*, the FAR provides useful guidance in identifying "direct selling" activities, as contrasted with bid preparation activities. 2002 WL 442011, at *3 n.3. The relevant regulation, in pertinent part, defines direct selling as

> those acts or actions to induce particular customers to purchase particular products or services of the contractor. Direct selling is characterized by person-to-person contact and includes such efforts as familiarizing a potential customer with the contractor's products or services, conditions of sale, service capabilities, etc. It also includes negotiation, liaison between customer and contractor personnel, technical and consulting efforts, individual demonstrations, and any other efforts having as their purpose the application or adaptation of the contractor's products or services for a particular customer's use.

FAR 31.205-38(5). Thus, the costs of promotional materials and communications designed to alert agency personnel to the availability and quality of a contractor's services constitute a separate and distinct category of costs, different from those costs incurred when preparing a proposal for a particular competitive procurement. Marketing and networking costs are not recoverable as bid preparation and proposal costs.

### C. Pre-Contract Logistics

A potential bidder on a government contract may engage in pre-contract endeavors and logistics in hopes that such investments may be recouped if awarded a profitable contract. Such investments take a variety of forms. Contractors may

attempt to obtain certifications as to the acceptability of their products or their suppliers, but the costs of these efforts are not recoverable as bid preparation and proposal costs. *See, e.g.*, *Stocker & Yale*, 1993 WL 181158, at *3 (stating that the costs of "developing and testing a product in order to qualify it for listing on a [qualified products list]" were not reimbursable as bid preparation and proposal costs); *Rotair Indus., Inc.*, B-224332, 87-1 CPD ¶ 238, 1987 WL 101552, at *4 (Comp. Gen. Mar. 3, 1987) (stating that the costs of submitting "source approval requests" were not reimbursable as bid preparation and proposal costs). To give another example, contractors may incur travel costs to find suitable suppliers, but these pre-contract logistics costs do not constitute bid preparation and proposal costs. *See Stocker & Yale*, 1993 WL 181158, at *4 (stating that such travel costs "represent the ordinary cost of dong business, rather than proposal preparation costs"). Thus, it is important to distinguish between the costs of pre-contract logistics, *i.e.*, the costs of activities which prepare a business for contract performance, from bid preparation and proposal costs. *See, e.g.*, *Coflexip*, 961 F.2d at 953 ("The contractor assumes the risk that it will not be awarded the contract, and, accordingly, these contract preparation costs will not be recoverable."); *AT & T Technologies*, 18 Cl. Ct. at 322 (holding that pre-contract equipment purchases and labor costs incurred in anticipation of the contract were not recoverable as bid preparation and proposal costs). According to the above-cited authorities, the costs expended by a potential bidder on pre-contract logistics are *not* bid preparation and proposal costs.

### IV. Analysis of Plaintiff's Claim for Bid Preparation and Proposal Costs

#### A. No Recovery Where No Bid Was Submitted

IDEA claims approximately $14,323 for 148 hours of labor performed by Mr. Crain, and further claims that these costs are bid preparation and proposal costs, even though no draft proposal was ever prepared by IDEA and no proposal was ever delivered to the agency by IDEA. As noted above, the definition of bid preparation and proposal costs is predicated on the foundational acts of actually preparing a draft proposal and submitting an actual proposal to a government agency. Here, plaintiff concedes that no proposal was ever submitted to the Air Force, and does not allege that a draft proposal was ever prepared by IDEA. Pl.'s Reply at 6. Plaintiff's claim is therefore both logically infirm and in fundamental conflict with FAR 31.205-18(a).

Nonetheless, the court will examine plaintiff's arguments to the contrary, which, it must be noted, have not identified a single decision from either this court or the GAO which permitted the recovery of bid preparation and proposal costs when no proposal had been submitted by the claimant. First, plaintiff argues that because the Air Force precluded IDEA from submitting a bid (by resorting to an improper sole-source procurement instead), "IDEA is entitled to the costs which it reasonably incurred in preparing to bid on a solicitation [that was never issued]." Pl.'s Mot. at 4. Plaintiff cites no authority for this argument. Second, plaintiff argues that because bid preparation and proposal costs may be incurred even when the protestor's proposal is unsolicited, IDEA's claim must therefore be valid. *Id.* at 5. In support of this argument, plaintiff cites the text of FAR 31.205-18(a), which does not distinguish between a proposal received after a solicitation has issued and a proposal received in the absence of a solicitation. Third, plaintiff raises an equitable argument, stating that denying IDEA any bid preparation and proposal costs would be unjust in the circumstances of this successful bid protest. Pl.'s Mot. at 5.

As discussed previously in this opinion, there is no support in the FAR for a claim for bid preparation and proposal costs when no draft proposal has been prepared and no proposal has been submitted to the agency. Furthermore, the court has not found a single case where a successful protestor has recovered bid preparation and proposal costs in the absence of a submitted bid. The GAO has specifically rejected the availability of such a recovery. *See Scientific Commc'ns, Inc.*, B-188827, 77-2 CPD ¶ 508, 1977 WL 11688, at *2 (Comp. Gen. Dec. 28, 1977) (stating that because the protestor had "failed to submit a bid . . . , the protester is not entitled to recover any preparation costs it may have incurred"). While plaintiff attempts to equate "preparing to bid," Pl.'s Mot. at 4, with bid preparation, these concepts are not the same. Because neither the FAR, GAO decisions nor the law in this circuit provides any authority for the recovery of bid preparation and proposal costs when no draft proposal has been prepared and no proposal has been submitted to the agency, IDEA's claim must be rejected in its entirety.

As for the "whether or not solicited" language in the definition of bid preparation and proposal costs found in FAR 31.205-18(a), IDEA's claim is not saved by this text. It is clear from the regulation that an unsolicited proposal received by a government agency may support a claim for bid preparation and proposal costs. IDEA neither prepared a draft unsolicited proposal nor submitted

an unsolicited proposal to the Air Force. In the absence of these foundational acts, no claim for bid preparation and proposal costs may succeed.[7]

Finally, plaintiff suggests that it is unjust for the Air Force to award an improper sole-source contract to Harris and escape any monetary liability to IDEA. This court's resolution of bid preparation and proposal costs claims depends on law, not equity. *See, e.g.*, *Coflexip*, 961 F.2d at 953 (relying on the FAR, not equitable principles, to determine the validity of a claim for bid preparation and proposal costs); *see also Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*) (stating that "the Court of Federal Claims does not have general equity jurisdiction"). As this court stated in another successful bid protest, illegal government procurement actions do not

> entitle [a protestor] to an award in excess of the legally recognized standard – proposal preparation costs. Although the government's conduct [in that case] was admittedly egregious, and the plaintiff was unmistakenly injured thereby, an award of [bid preparation and proposal] costs does not serve any punitive function that would entitle a plaintiff to an expanded recovery. . . .
> [The fact that] the government acts illegally has no meaningful impact on the measure of [a protestor's] recovery.

*AT & T Technologies*, 18 Cl. Ct. at 323. In bid protests, monetary relief in this forum is limited to bid preparation and proposal costs.[8] 28 U.S.C. § 1491(b)(2). Here, by law, IDEA cannot recover bid preparation and proposal costs, therefore it is entitled to no monetary relief whatsoever.

### B. No Actual Bid Preparation and Proposal Costs Claimed

---

[7]/ Defendant argues that certain threshold criteria for unsolicited proposals have not been met by IDEA's actions that are described in its request for bid preparation and proposal costs. Def.'s Opp. at 7 & n.4. Because IDEA does not allege that it presented an unsolicited proposal to the Air Force, the court need not reach this issue.

[8]/ Requests for the award of attorney fees are a different matter which will be discussed *infra*.

Even if IDEA could recover bid preparation and proposal costs in circumstances where no draft proposal was created and no actual proposal was submitted to the Air Force, the labor costs claimed by IDEA cannot be characterized as falling within the types of costs that are recoverable as bid preparation and proposal costs. As noted earlier in this opinion, bid preparation may include generating engineering and cost data, reviewing specifications and bid forms, drafting and printing a proposal, and delivering the proposal to a government agency. IDEA's "bid preparation" narrative does not describe such activities,[9] but instead describes general small business management activities such as business planning and looking for business opportunities. *See* Pl.'s Reply at 11 n.16 (summarizing IDEA's "bid preparation" activities as including "analysis, budgeting, scheduling, partner identification, etc."); Pl.'s Mot. at D-7 (identifying tasks such as checking the FedBizOpps website twice a week). Because the types of labor expended by Mr. Crain do not fall within the types of tasks included in the definition of bid preparation, IDEA's claim for bid preparation and proposal costs must fail.

The court notes, too, that the types of tasks allegedly performed by Mr. Crain have been rejected by this court and the GAO as clearly falling outside the narrow category of bid preparation and proposal costs. IDEA's claim includes labor costs incurred for attending a contractor training class, Pl.'s Mot. at D-8, which, as noted above, are not recoverable as bid preparation and proposal costs. Many hours were expended visiting contacts at Scott Air Force Base and attempting to call and email officials responsible for the CMAS program. *Id.* at D-8 through D-9. These labor costs, as noted above, constitute marketing, networking and direct selling costs, not bid preparation and proposal costs. IDEA also claims to have incurred labor costs for deciding to compete for an anticipated

---

[9]/ Although Mr. Crain states that he invested time "drafting tentative bid paragraphs[] and the like," Pl.'s Mot. at D-7, the court cannot conclude that this vague attestation indicates that any recoverable bid preparation and proposal costs were incurred. Labor expended on crafting "tentative bid paragraphs," when no solicitation had issued, is more appropriately characterized as business planning than as actual bid preparation, in the court's view. In any event, the court must agree with defendant that IDEA has failed to segregate alleged labor hours spent on drafting "tentative bid paragraphs" from more general tasks described in its claim, and that this failure forecloses any recovery for such labor costs. *See* Def.'s Opp. at 25-26 ("Mr. Crain's vague reference to 'plan/prep' does not allow the Government or the Court to determine what activities were conducted, why they were necessary, or how they relate to IDEA's purported bid, so the costs must be denied." (citing *Lion Raisins*, 52 Fed. Cl. at 636 n.8)).

CMAS competition, planning for the infrastructure needed to perform CMAS services, considering possible sub-contractors, gathering information about recent developments in the CMAS program, and monitoring FedBizOpps for any announcements regarding a procurement of CMAS services. *Id.* at D-4 through D-9. As discussed above, these costs constitute general business costs and pre-contract costs, not bid preparation and proposal costs. Even if IDEA could recover bid preparation and proposal costs where it has not submitted a bid to the Air Force, its claim contains no actual bid preparation and proposal costs and must be rejected for this reason as well.[10]

### C. Amounts Claimed Are Excessive

Finally, the court addresses defendant's contention that even if IDEA's claimed costs were recoverable in some reasonable amount, the amount of costs claimed by IDEA is not reasonable. Defendant's challenge to the reasonableness of the amount claimed is multi-faceted, but only two aspects of this challenge need be addressed by the court – the government argues both that the hourly rate charged for Mr. Crain's labor is too high, and that the amount of time he claims to have expended on certain activities is excessive. The court must agree with both contentions of the government.

Plaintiff's claim, at least as originally presented, charged between $96.61 and $97.85 per hour for Mr. Crain's labor. Pl.'s Mot. at D-7. Although plaintiff acknowledges that this rate might need to be reduced, no specific alternative figure was proposed by IDEA. Pl.'s Reply at 20-22. The government states that an appropriate cap on hourly rates for anyone performing such services would be no higher than $62.06. Def.'s Opp. at 13 n.5 (citations omitted). The court notes that another figure in the record, $80.90 per hour, may represent what IDEA charged Harris for Mr. Crain's time in 2007. Pl.'s Mot. at D-10. Even this figure,

---

[10]/ Defendant raises a number of general arguments against IDEA's bid preparation and proposal costs claim. One of the principal arguments raised by the government is that the costs claimed by IDEA are not allocable to the sole-source CMAS procurement conducted by the Air Force. Def.'s Opp. at 9-10. Another principal argument is that the documentation submitted by IDEA is insufficient to show that the identified labor costs were actually incurred by IDEA. *Id.* at 10. Plaintiff disagrees with both of these contentions. Because neither of these disputes is essential to the court's resolution of IDEA's claim, the court declines to address them in this opinion.

16

however, is not indicative of the proper compensation rate, for two reasons.  First, the services IDEA provided Harris are not the same as the labor expended by Mr. Crain in his efforts to position IDEA for a potential CMAS competition.  Second, the parties appear to agree that the rate of $80.90 per hour likely includes profit, *see* Pl.'s Reply at 21, in which case the $80.90 per hour rate does not reflect Mr. Crain's actual compensation rate, *see* Def.'s Opp. at 12 (citing *Rocky Mountain Trading Co.-Sys. Div.*, GSBCA No. 8943-C, 89-3 BCA ¶ 22110 (July 26, 1989)).

   The court, based on all of the evidence in the record and the parties' arguments, concludes that IDEA has claimed an excessive hourly rate for Mr. Crain, and that it is impossible to discern from IDEA's submissions the correct, actual rate of compensation for Mr. Crain's services.  This court, the General Services Board of Contract Appeals and the GAO have consistently rejected bid preparation and proposal costs claims when documentation substantiating the actual hourly compensation rate of personnel has not been provided in the claim. *E.g.*, *Impresa*, 61 Fed. Cl. at 184; *Rocky Mountain*, 89-3 BCA ¶ 22110; *John Peeples*, B-233167, 91-2 CPD ¶ 125, 1991 WL 162540, at *2 & n.2 (Comp. Gen. Aug. 5, 1991); *W.S. Spotswood & Sons, Inc.*, B-236713, 90-2 CPD ¶ 50, 1990 WL 293706, at *2 (Comp. Gen. July 19, 1990).  Accordingly, even if IDEA's bid preparation and proposal costs claim were otherwise recoverable, the failure to substantiate Mr. Crain's hourly compensation rate dooms the entire claim.

   Turning now to defendant's contention that the hours of labor claimed for certain of Mr. Crain's tasks are not reasonable, the court must again agree.  The hours charged for visits to Scott Air Force Base, for phone calls to various Air Force officials, for composing and sending email messages, and for monitoring the FedBizOpps website all appear to the court to be excessive for the specific tasks identified by plaintiff.[11]  In its reply brief, plaintiff argues that the hours expended by Mr. Crain, when averaged, represent a reasonable weekly effort for the tasks identified in IDEA's claim.  Pl.'s Reply at 10.  This argument, in the court's view, is inapposite – plaintiff's burden is to show, in adequately detailed documentation, that a reasonable number of hours were spent on specifically identified tasks.  *See, e.g.*, *Impresa*, 61 Fed. Cl. at 184 (requiring "specific documentary evidence" to

---

[11]/ As defendant notes, the aggregation and imprecise description of multiple tasks in line-items of charged labor renders the analysis of the reasonableness of these labor hours extremely difficult.  Def.'s Opp. at 17.

17

support a bid preparation and proposal costs claim); *Lion Raisins*, 52 Fed. Cl. at 636 ("It is axiomatic that in order to meet its burden of proof, a claimant must provide document[ation] sufficiently detailed so as to allow the court to determine the reasonableness of the costs claimed.") (citations omitted); *Stocker & Yale*, 1993 WL 181158, at *7 (refusing to award costs "which appear to be excessive or otherwise unreasonable") (citation omitted).  Because the documentation provided by IDEA shows that certain specific charges for labor hours are excessive for the tasks described, plaintiff's claim for bid preparation and proposal costs is not reasonable.

Plaintiff attempts to refute defendant's pointed criticism of IDEA's excessive labor charges, arguing that some entries in IDEA's bid preparation and proposal costs claim have been misconstrued by the government as excessive.  For example, according to plaintiff, labor charges for networking visits should be read to include travel time, Pl.'s Reply at 13; a seven-hour labor charge for a telephone call should be read to include both the seven-minute phone call and several hours of post-call analytical tasks performed by Mr. Crain, *id.* at 16; and aggregate amounts of time for planning, preparation, and website monitoring, in monthly line-item blocks as large as 11.5 hours, should be read as having been appropriately divided, each week of that month, between these activities, *id.* at 17.  Having considered all of the parties' arguments, the court must conclude that the aggregated accounting of Mr. Crain's labor, even as further explained in plaintiff's reply brief, presents excessive labor charges for the activities identified in IDEA's bid preparation and proposal costs claim.  The accounting presented to the court does not meet plaintiff's burden to show that its claimed costs are reasonable.  Thus, even if plaintiff's costs claim were otherwise recoverable, a significant portion of that claim would be rejected as unreasonable and excessive.

## V.   Attorney Fees

The court notes that the complaint's prayer for relief contains a request for attorney fees.  Compl. ¶ 81(F).  The court has not permitted briefing of this issue to date, for two reasons.  First, a request for attorney fees is not ripe until final judgment has been entered in an action.  *See* Rule 54 of the Rules of the United States Court of Federal Claims.  Second, the disposition of plaintiff's claim for bid preparation and proposal costs would provide a crucial indicator of the measure of IDEA's success in this suit.  For example, if a bid protestor such as IDEA obtained no monetary relief for bid preparation and proposal costs, after having being

denied injunctive relief because its claims for injunctive relief were moot, there is binding precedent which holds that such a plaintiff would not be a prevailing party entitled to recover any attorney fees. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (holding that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"); *Singer v. Office of Senate Sergeant at Arms*, 173 F.3d 837, 841 (Fed. Cir. 1999) (same). While this court does not presume to know exactly what legal arguments counsel might present, the court observes that because IDEA received neither injunctive nor monetary relief in this suit, the court would be obliged to apply and to follow this binding precedent in ruling on a motion for the award of attorney fees, should such a motion be filed.

## CONCLUSION

IDEA has not shown that it is entitled to any bid preparation and proposal costs in this bid protest. All claims in this case have now been resolved and final judgment must be entered. Accordingly, it is hereby **ORDERED** that

(1) Plaintiff's Motion for the Award of Bid Preparation Costs, filed May 10, 2013, is **DENIED**;

(2) The Clerk's Office shall **ENTER** final judgment on the claims in the complaint, as set forth in the court's opinion and order of January 29, 2013, as well as for defendant as to plaintiff's request for bid preparation and proposal costs; and

(3) No costs to either party.

/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge